UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

JOHN Y. KIM,

                                    Petitioner,

                                                    06 Civ. 5365 (RPP)

        - against -

                                                    **OPINION AND ORDER**

COLUMBIA UNIVERSITY,

                                    Respondent.
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/09

**Robert P. Patterson, Jr., U.S.D.J.**

        On September 11, 2008, pursuant to Rule 37 of the Federal Rules of Civil

Procedure (Fed. R. Civ. P.), Plaintiff John Y. Kim moved for a default judgment based on

Defendant Columbia University's alleged failure to comply with Interrogatories issued by

Plaintiff as well as court ordered disclosure of discoverable information held by

Defendant. Plaintiff also seeks additional relief as explained below. On October 14,

2008, Defendant moved to dismiss Plaintiff's motion (Defendant's 10/14/2008

Memorandum in Opposition ("Def. Memo")), and also filed a cross-motion to compel

Plaintiff to supplement his initial and supplemental Rule 26 Disclosure Statements.

(Defendant's 10/14/2008 Cross-Motion to Compel ("Def. Cross-Motion").) For the

reasons explained below, Plaintiff's motion for a default judgment is held in abeyance

pending Defendant's compliance with this order. Plaintiff's request for additional relief

is granted in part and denied in part. Defendant's motion to compel is denied.

**1. Factual Overview**

        A. Background

        The crux of this lawsuit is Plaintiff's allegation that in 1992 Defendant unlawfully

discharged Plaintiff from his employment due to his race (Asian) and age (44 years old).

In 2002 and 2003 a hearing was held on the matter before the New York State Human Rights Division (NYSHRD), which, relying upon hearsay evidence, concluded that Plaintiff had been properly terminated due to his uncivil behavior toward other staff members in the computing department of Columbia Business School, where he worked. (October 18, 2008 Declaration of Laura Barbieri in Opposition to Plaintiff's Motion ("Barbieri Decl."), Ex. TT [03/01/06 Opinion of State Division of Human Rights].) Notably, the Division of Human Rights determined that the Director of Computer Services, James Haggard, had properly terminated Plaintiff after Haggard believed Vanessa Clark's accusation that Plaintiff had hurled a large box in the direction of Clark, who was a student-employee serving as a personal aide to Haggard. (Id.)

On March 29, 2006, Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC) concerning his claim against Defendant for unlawful termination of employment based on age and ethnic origin discrimination. (Barbieri Decl., Ex. A [Right to sue letter and Complaint].) On June 19, 2006, Plaintiff brought this suit *pro se* in the Southern District of New York, alleging claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. (Id.)

On June 7, 2007, after attempts at mediation failed, Plaintiff filed an amended Complaint with this Court, alleging age and racial discrimination in connection with his initial termination from Defendant's employ in April of 1992. (Barbieri Decl., Ex. I [Amended Complaint].) Plaintiff also alleged in his Complaint that he was unlawfully retaliated against when he was terminated for a second time subsequent to his July 1992 filing of a discrimination complaint with the EEOC. (Id. at 6.) On August 16, 2007, Plaintiff again amended his Complaint because he had failed to comply with Rule 10 of

2

the Federal Rules of Civil Procedure, which requires a complaint's paragraphs to be numbered. (Barbieri Decl., Ex. J [06/14/2007 letter from defense counsel Laura Barbieri]; Barbieri Decl., Ex. O [second amended complaint].)

In his second amended Complaint, Plaintiff reiterated his claims of discrimination under federal law, and he added claims under New York State Human Rights Law. (Barbieri Decl., Ex. O at 1.) In this Complaint, Plaintiff alleged that the newly hired Director of Computing and Information Services at Columbia Business School, James Haggard, hired only white men for his staff, and further, that Plaintiff had been fired on April 6, 1992 under the pretext of fabricated misconduct. (Id. ¶¶7-28.) Specifically, Defendant claimed that Plaintiff was terminated for violating departmental policy regarding the purchasing of equipment, but in fact, Plaintiff alleges there was no such policy in existence in April 1992. (Id. ¶¶31-35, 49.)

In response to his termination, the Complaint alleged, Plaintiff filed a grievance with Columbia asserting that he, in essence, had been illegally terminated based on discrimination during employment; on June 25, 1992, the Grievance Committee ruled in Plaintiff's favor and "concluded that the Business School action to release Mr. Kim from employment was not carried out according to a proper procedure." (Id. ¶¶38-46.) Despite being rehired by Columbia, Plaintiff filed a complaint of discrimination with the EEOC on July 31, 1992. (Id. ¶¶46, 51.) In early September of 1992, the Grievance Committee, without affording Plaintiff a hearing, reversed its earlier conclusion and determined that Plaintiff had been properly fired from his job due to his "continued violation of departmental and University purchasing policy and procedures." (Id. ¶49.) On September 28, 1992, Plaintiff was once again terminated by Defendant. (Id. ¶¶51-

52.) Plaintiff contends that these allegations of poor job performance were trumped up. (Id. ¶56.)

## B. The Discovery Process

At a January 25, 2007 conference, the Court advised Plaintiff that he should attempt to get an attorney, and the Court suggested that the parties utilize the *pro se* mediation procedure of this Court. (Barbieri Decl., Ex. C [01/25/07 transcript].) The parties agreed to try mediation and the matter was put over to March 2, 2007 and subsequently adjourned to May 9, 2007. On May 9, 2007, mediation having failed, the Court granted Plaintiff's request for leave to file an amended complaint by June 8, 2007. (Barbieri Decl., Ex. D [05/09/07 transcript].) The Court ordered that by July 6, 2007, the parties make Fed. R. Civ. P. Rule 26 disclosure, which requires each party to disclose "each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defense," along with each individual's address and telephone number. (Id. at 6-7.) Defense counsel Laura Barbieri stated that all of Defendant's potential witnesses had previously testified at the 2002-03 proceeding before the NYSHRD. (Id. at 10-11.)

Plaintiff responded that he could not afford to purchase the transcripts of those proceedings, and defense counsel volunteered to provide Plaintiff with copies of those transcripts by May 15, 2007. (Id. at 11-12.) Accordingly, the Court ordered that Defendant provide Plaintiff with the NYSHRD hearing transcripts by May 15, 2007, and further ordered that Plaintiff's case be added to the *pro bono* panel list. The Court suggested January 2008 for completion of discovery. Defense counsel then commented that in providing Rule 26 disclosure, in addition to giving the name of the witness, her

4

practice was to "give a brief summary of what kind of knowledge that person has." (Id. at 22.) The next conference was scheduled for July 17, 2007. (Id. at 24.)

In a letter dated May 15, 2007, Defendant provided Plaintiff with the transcripts from "the hearing conducted before the New York State Division of Human Rights." (Barbieri Decl., Ex. F [05/15/07 letter].) Prior to receiving these transcripts, in a May 16, 2007 letter to this Court, Plaintiff notified the Court that he had not received any of the hearing transcripts from Columbia on May 15, 2007, as the Court had directed in its May 9, 2007 scheduling order. (Barbieri Decl., Ex. H [Plaintiff's letter and scheduling order].) On May 22, 2007, the Court ordered Defendant to comply with its May 9, 2007 scheduling order, and ordered Plaintiff to consult with the *pro se* office as to service by mail procedures. (Barbieri Decl., Ex. H [Court order].)

On July 6, 2007, Defendant served on Plaintiff its initial Rule 26 disclosure, listing the name of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses..." (Barbieri Decl., Ex. K [Rule 26 Statement].) Defendant listed the name and position for the following six individuals: Doreen Mocha (former Assistant Director of Employee and Labor Relations at Columbia University), Professor Richard Sacks (former executive director of Columbia Business School's Department of Information Technology and Computing), James Haggard (former Executive Director of Columbia Business School's Department of Information Technology and Computing), Vanessa Clark (former Columbia student and co-worker of Plaintiff), Dean Gerry Lewis (former Dean of Columbia Business School), and Rona Carr (former director of Human Resources at Columbia Business School). (Id.)

5

Fed. R. Civ. P. 26(a)(1) requires parties to disclose the "name and, if known, the address and telephone number of each individual." Defendant wrote that "none of the addresses and telephone numbers of the persons listed above is currently known. Columbia is attempting to obtain these individuals last known addresses and telephone numbers. Pursuant to Columbia policies, however, the addresses and telephone numbers of former faculty, employees and students are not provided to requesting parties without the express and written consent of the individuals, given Columbia's concern for the privacy of persons associated with the University." (Barbieri Decl., Ex. K.)

At the July 17, 2007 court conference, Defendant's counsel requested, and the Court ordered, that Plaintiff serve his Rule 26 disclosures as well as his amended Complaint by August 16, 2007. (July 17, 2007 Transcript ("07/17/07 Tr.") at 3.) Additionally, the Court ordered that Defendant file an answer to Plaintiff's complaint by September 17, 2007, that discovery be completed by January 1, 2008, and that a pretrial order or dispositive motions be made by February 8, 2008. (Id. at 11-13.) Plaintiff then raised the issue that Defendant had failed to disclose the last known address and telephone number of the six witnesses it listed in its Rule 26 disclosure form. (Id. at 5.) The Court ordered Defendant to disclose this information to Plaintiff, and in particular, disclose the contact information of Vanessa Clark, the student employee who allegedly had a box hurled at her by Plaintiff. (Id. at 5, 9-10.)

In a letter dated July 20, 2007, Plaintiff submitted his Rule 26 Initial Disclosures, providing the names of forty-one witnesses that could be material to his case, and, per defense counsel's instructions at the May 9, 2007 conference, detailed reasons why the witnesses were relevant to his case and what information each witness was expected to provide. (Barbieri Decl., Ex. Q [Plaintiff's Initial Rule 26 disclosure].) Plaintiff noted

6

that the "addresses and telephone numbers" of the witnesses were "in the sole possession of" Defendant, and as soon as Defendant "reveal[ed] that information as required," he would "provide it" to the Court. (Id.) Although the letter was dated July 20, 2007, the accompanying mailed envelope provided by Defendant indicates that the Rule 26 Disclosure was not mailed to Defendant until October 18, 2007. (Barbieri Decl., Ex. Q [Plaintiff's Initial Rule 26 Disclosure].)

On August 17, 2007, Plaintiff filed his second amended complaint (Barbieri Decl., Ex. O), which Defendant answered on September 17, 2007. (Barbieri Decl., Ex. P [Defendant's answer])

On November 19, 2007, Plaintiff filed his first interrogatory, which asked for the address and phone number for Rona Carr and Vanessa Clark, as well as the date and reason why they ceased to be employed by Defendant. (Barbieri Decl., Ex R [first interrogatory].)

On November 26, 2007, Plaintiff filed a document request, asking Defendant to "produce a copy of a correct version of [the] Columbia University Personnel Policy Manual that is relevant at the time plaintiff was initially hired. (1986)." (Barbieri Decl., Ex. S [document request].) The request further explained that "this particular Columbia University Personnel Policy Manual provided that 'Officers of University Administration' would not be terminated except for 'cause' as well as policy guidelines for termination of employment.'" (Id.)

On November 30, 2007, Plaintiff sent Defendant a second interrogatory request, this time demanding various information concerning Plaintiff's former colleagues and their rate of pay. (September 12, 2008 Affidavit of Plaintiff in Support of Motion for Default Judgment ("Kim Aff."), Ex. 10 [second interrogatory].) Specifically, Plaintiff

7

requested: his compensation and fringe benefits that he received as an employee of Defendant; the salary and fringe benefit history as well as the job title and the reason for the individual's resignation from Columbia of "James Haggard, James Keown, Bonnie Simms, Vanessa Clark, Peter Bombace, Robert Landstein, John Ellrodt, Mathew Levine, and John Elrodt"; the identity, race, and age of all the "officers of Administration" at Columbia Graduate School of Business who were grade 12 or above; the identity, race, and age of all employees of the Columbia Business School; the recruitment efforts surrounding the hiring of James Haggard for the position of Executive Director of Computing in 1991; documents concerning any disciplinary actions related to Plaintiff; documents regarding Plaintiff's performance evaluations; "department policy" documents for Computing and Information Services Department; and the "non-discriminatory reason(s) Plaintiff was" terminated. (Id.)

On December 12, 2007, Defendant allegedly responded to Plaintiff's interrogatory and Request for Production of Documents, which had been sent on November 30, 2007. (09/11/08 Affidavit of Laura Barbieri ("09/11/08 Barbieri Aff.") ¶2(c).) In its response, Defendant put forth a host of objections to Plaintiff's requests, and further, maintained that most of the information had been previously disclosed to Plaintiff in prior proceedings. (09/11/08 Barbieri Aff. Ex. C.) Plaintiff denies receiving this response, and Defendant presents nothing to indicate that the response had been mailed. In a January 30, 2008 letter to the Court and defense counsel, Plaintiff asserted that he had not received a response to this interrogatory and Request for Production of Documents from defense counsel. (Barbieri Decl. Ex. X [01/30/2008 letter from Plaintiff].) Defendant did not contradict Plaintiff's statement.

8

On December 14, 2007, the Court received a letter from Plaintiff concerning Defendant's failure to provide him with the addresses of the six witnesses -- Doreen Mocha, Professor Richard Sacks, James Haggard, Vanessa Clark, Dean Gerry Lewis, and Rona Carr -- noticed by Defendant in its July, 2007 Rule 26 disclosure. (Kim Aff. Ex. 1 [12/14/2007 Letter]; Barbieri Decl., Ex. K [Defendant's Rule 26 Statement].) Plaintiff stated in this letter that although Columbia University claimed in its Rule 26 Disclosure that "none of the addresses and telephone numbers of the persons listed above was currently known," this statement was false because the first two individuals listed in the Rule 26 statement -- Doreen Mocha and Richard Sacks -- were "current employees and have been employed for more than 10 years and [were] not former employees." (Kim Aff. Ex. 1 at 1.) He pointed out that five months had passed since the Court ordered Defendant to turn over this contact information in July 2007, and he had not received a single document from defendant Columbia University regarding those individuals' last known addresses and telephone numbers. (Id.) Plaintiff asked that the contact information for all six persons be supplied by Defendant. (Id.) In a subsequent letter dated December 17, 2007, Plaintiff stated that he had received "12 days of hearing transcript," but complained that he had not received the transcripts from October 9, 2002 and May 29, 2003, and he therefore requested the transcripts from those days as well. (Barbieri Aff., Ex. U [12/17/07 letter]; Kim Aff. Ex. 9.)

On December 19, 2007, the Court ordered Defendant to produce to Plaintiff by January 2, 2008 the last known address of each of the six witnesses noticed by Defendant on its Rule 26 submission. (Kim Aff. Ex. 1 at 3.) On December 28, 2008, Plaintiff filed a Supplement to his initial Rule 26 Disclosures, providing the names of fifteen additional persons who he claimed had information related to his case. (Barbieri Decl., Ex. V

9

[supplemental Rule 26 disclosure].) Next to each name, Plaintiff provided a short description of what information each witness was expected to have. (Id.) The supplemental disclosure stated that "all of the addresses and telephone numbers of the persons listed above are in the sole possession of defendant Columbia University. As soon as defendant Columbia University discloses that information, as required, I will provide them." (Id.) The letter further gave Defendant "NOTICE" that this was the "second request for the addresses and telephone numbers of all persons listed in the Rule 26 Initial Disclosure Statement dated July 20, 2007 and all persons listed in this Supplement Disclosure." (Id.)

On January 17, 2008, the Court received a letter from defense counsel asking the Court to order Plaintiff to supply Defendant with telephone numbers or fax numbers or addresses where defense counsel could reach him and an address where Plaintiff could give a written acknowledgement of his receipt of Defendant's materials. (Kim Aff. Ex. 5 [01/17/2008 letter from defense counsel].) Defense counsel claimed that she had unsuccessfully attempted to reach Plaintiff several times following the receipt of the Court's December 19, 2007 order requiring Defendant to disclose the address of the six witnesses. (Id.) The Court memo endorsed the letter ordering Plaintiff to provide Defendant with such information on January 23, 2008. (Id.)

That same day, defense counsel addressed a letter to Plaintiff acknowledging receipt of his supplemental Rule 26 list dated December 28, 2007 and his request for the addresses and telephone numbers of those persons, stating that "they are in Defendant's sole possession." (Barbieri Decl., Ex. X [01/17/08 Letter from Defense Counsel].) The letter stated that Rule 26 "does not require you to provide Columbia with information we may already have ... [a]ccordingly, Columbia does not require that you provide this

10

contact information to us." (Id.) In essence, Defendant acknowledged that it had the contact information for the persons listed on Plaintiff's Rule 26 list but failed to provide that information to Plaintiff.

On January 18, 2008, defense counsel sent Plaintiff a letter containing the last known addresses, but not the phone numbers, of the six witnesses contained in Defendant's Rule 26 Statement -- Vanessa Clark, Doreen Mocha, Richard Sacks, Gerald Lewis, Rona Carr, and James Haggard. (Kim Aff. Ex. 6 [01/18/08 letter from defense counsel].)

On January 30, 2008, Plaintiff, in response to defense counsel's January 17, 2008 letter seeking his correct address and telephone number, sent a letter to the Court providing it with the same address and telephone number as was listed on his original complaint filed in 2006. (Barbieri Decl. Ex. X.) Plaintiff stated that he did not have a fax machine and that there had been no problem with either the telephone or with any aspect of his mail delivery, despite the claims made by defense counsel in her letter to the Court of January 17, 2008. (Id.)

The January 30, 2008 letter went on to state that Defendant had failed to comply with the Court's order dated December 19, 2007, and further, that although Defendant had provided Plaintiff with transcripts for twelve days of NYSDHR hearings in May 2007, he had not received as requested the two volumes of the NYSDHR hearing transcript dated October 9, 2002 and May 29, 2003. (Barbieri Decl. Ex. X.) Plaintiff maintained that Defendant's letter requesting contact information was deceptive in that no attempt had been made to reach him and he stated "there have been no issues regarding the receipt of information in the past as stated in Defendant's letter of January 17, 2008." (Id.) Plaintiff then pointed out that Defendant had failed to respond to his

11

written interrogatory dated November 19, 2007, his request for production of documents dated November 26, 2007, and his interrogatories and request for production of documents dated November 30, 2007, even though sixty days had passed. (Id.)

Defendant never responded to this letter, and on February 3, 2008, the Court ordered that by February 8, 2008, Defendant must answer Plaintiff's requests for production of documents (namely, the personnel manual), as well as completely answer the two interrogatories from November 2007. (Kim Aff. Ex. 7.) The Court stated that "if Defendant [was] worried about documentation of receipt by Plaintiff, it may use registered mail return receipt requested." (Id.)

On February 9, 2008, Defendant served a response to Plaintiff's November 19, 2007 interrogatory concerning how and why Rona Carr and Vanessa Clark left Defendant's employ. (Barbieri Decl., Ex. BB [Defendant's Response].)[1]  Defendant explained that 1) Rona Carr left the University and thereafter formed The Aviation International Group (TAIG) in/or about January 2002; and 2) Vanessa Clark was not an officer of the University and not subject to "resignation, termination, dismissal or release as those terms are understood within the context of Columbia's Personnel Manuals. (Id.) Defendant further stated that the addresses and phone numbers of Carr and Clark would

---

[1] In his current motion, Plaintiff asserts that Defendant's response to his first interrogatory (Barbieri Decl., Exhibit BB) is a "phony document fraudulently altered and manufactured," which he never before received. (Kim Aff. ¶¶25-26.) He buttresses this statement with copies of all return receipts of Registered Mail and envelopes received from Defendant, none of which support Defendant's claim that anything was mailed on February 9, 2008 to Plaintiff. (Kim Reply Aff. Ex. 10.) While the Court declines to rule on the authenticity of Barbieri Decl., Ex. BB, there are a number of problems with this document. First, the top of the second page of the document appears to be cut-off or non-continuous from the first page of the document. And, while this document was allegedly created on February 9, 2008, defense counsel claimed that the addresses and phone numbers of Clark and Carr would be provided subject to a Confidentiality Order. However, three weeks earlier, on January 18, 2008, the same defense counsel had provided the addresses of Clark and Carr, along with the addresses of four other people, to Plaintiff. Lastly, five days after the February 9, 2008 response to the interrogatory was allegedly sent, Plaintiff mailed a letter to defense counsel claiming that he had not yet received an answer to this set of interrogatories. (Barbieri Decl., Ex. CC [02/14/08 letter from Plaintiff].) These factors raise doubts as to the authenticity of the February 9, 2008 document provided to the Court

be given "subject to a Confidentiality Order." (Id.) No draft confidentiality order was attached, and Defendant did not raise the possibility of a confidentiality order with the Court at that time.

On February 14, 2008, Plaintiff sent a letter to defense counsel complaining that he had not received an answer to "1) Plaintiff's First Set of Interrogatories dated November 19, 2007; 2) Plaintiff's request for Production of documents dated November 26, 2007; 3) Plaintiff's Interrogatories and Request for Production of Documents dated November 30," 2007 and the "Hearing Transcript of October 9, 2002 and May 29, 2003." (Barbieri Aff., Ex. CC.)

On February 25, 2008, defense counsel partially responded to Plaintiff's letter, stating that she had "obtained the May 29, 2003 transcript" Plaintiff requested and would send it by certified mail on February 26, 2008. (Barbieri Decl., Ex. DD.) In a subsequent letter sent that same day, defense counsel claimed that she did "not have a transcript for October 9, 2002," and she was "awaiting a response from the State Division to determine whether we met that day or not." (Barbieri Decl., Ex. EE.) Both letters sent by defense counsel to Plaintiff asked Plaintiff to return the phone calls she had earlier made to Plaintiff as that was "more productive and speeds the process." (Barbieri Decl., Exs. DD, EE.) On February 27, 2008, defense counsel sent to Plaintiff a copy of the May 29, 2003 transcript that he had requested. (Barbieri Decl., Ex. GG). On April 10, 2008, defense counsel sent Plaintiff a copy of the October 9, 2002 transcript, obtained from NYSHRD storage. (Barbieri Decl., Ex. HH.)

On April 30, 2008, defense counsel wrote to Plaintiff acknowledging receipt of Plaintiff's supplemental Rule 26 Disclosure dated December 28, 2007 (Kim Aff. Ex. 12), which identified "numerous individuals each of whom you state has personal knowledge

13

regarding false allegations fabricated by 'Haggard' or 'Sacks.'" (Id.) The letter stated that Plaintiff's disclosures did "not provide sufficient information possessed by any of the individuals you name," and it asked Plaintiff to "amend" his disclosures to "include the specific information each person possesses and include, if known, the date or dates, or general time period by month or year applicable to each person's information ..." (Barbieri Decl., Ex. JJ [04/30/08 letter from defense counsel].) There is no evidence that Plaintiff responded to this letter.

In a second letter dated April 30, 2008, defense counsel provided Plaintiff with the addresses and telephone numbers of two individuals from Plaintiff's supplemental Rule 26 Disclosure, both of whom were current professors at Columbia Business School. (Barbieri Decl., Ex. KK [04/30/08 letter from defense counsel].) Counsel advised that "certain information that may be disclosed in the future is confidential" and stated that it was enclosing a proposed Confidentiality Order for Plaintiff's review. (Id.) No Confidentiality Order was attached. Instead, counsel attached a response to Plaintiff's November 26, 2007 request for the "correct version of Columbia University Personnel Policy Manual including Policy Guidelines for Termination of Employment." (Id.) This response consisted of two pages Bates numbered 00001 and 00002 which concerned the definition of an employee's "release" and the definition of a "discharge." (Id.) Defendant took five months to provide these two pages of information.

On May 22, 2008, Plaintiff sent defense counsel a letter stating that defense counsel was in "contempt" of court for failing to give Plaintiff a "complete answer to (1) Plaintiff's first set of interrogatories dated November 19, 2007; 2) Plaintiff's request for production of documents dated November 26, 2007; and 3) Plaintiff's interrogatories and

14

request for production of documents dated November 30," 2007. (Barbieri Decl., Ex. LL [05/22/08 Letter from Plaintiff].)

Plaintiff attached a "request for production of documents" and "interrogatories" to the May 22, 2008 letter, which repeated his demand that Defendant produce his "personnel records," his "job title and description, as well as the starting date and termination date of his employment," his compensation and fringe benefits, and the "legitimate non-discriminatory reason(s) the defendant claims motivated the adverse action(s) taken against plaintiff." (Id.) The letter further notified defense counsel that pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, responses were due within 30 days of discovery requests, and thus, responses to his earlier requests were five months overdue and more than three months had passed since the Court ordered Defendant to respond to them by February 8, 2008. (Id.) There is no indication of a response from Defendant until September 11, 2008, when Defendant filed objections to Plaintiff's requests. (09/11/08 Barbieri Aff. Ex. C.)

In August 2008, not having heard from the parties for some time, the Court scheduled a conference for September 2, 2008. At the conference on September 2, 2008, the Court asked defense counsel to state where the matter stood and if discovery had been completed. The following exchange occurred.

Counsel: Discovery as far as Columbia is able to produce is completed. However, Mr. Kim has requested a number of items both with respect to the identity of parties' names and addresses, documents, etc. that Columbia has not been able to produce and has so informed Mr. Kim.

The Court: Identity of who?

Counsel: Students and other individuals who [Plaintiff] claims are people with quote-unquote relevant information.

The Court: They are students?

15

Counsel: Students, yes.

(September 2, 2008 Transcript ("09/02/08 Tr.") at 2.) Defense counsel then stated that Defendant had notified Plaintiff that his request for the last known addresses and telephone numbers of the persons listed in his Rule 26 Disclosures was defective because it did not state specifically what information those individuals possessed concerning Plaintiff's termination. (Id.) Counsel asked Plaintiff to specify the nature of what each of the individuals knew about Plaintiff's charges of discrimination, and counsel wanted Plaintiff to move to compel so that "we could address these issues before the court and Mr. Kim would be required as a matter of law to state what it was he hoped to accomplish by this extensive discovery." (Id.)

The Court then pressed Plaintiff as to why these persons, for whom he had asked for last known addresses and telephone numbers, were in a position to have knowledge of the acts of which he was complaining. (09/02/08 Tr. at 3-4.) Plaintiff advised that he had made his first request on July 20, 2007 for the addresses and telephone numbers of 41 persons and that he made a supplemental request for the last known addresses and telephone numbers for 15 more persons on December 28, 2007. (Id.) This contact information was in Defendant's sole possession; nonetheless, Defendant refused to provide the witnesses' last known addresses with the exception of two professors' addresses that were turned over at the end of April, 2008. (Id. at 4.) Plaintiff stated that the some of the names on his Rule 26 lists were of student employees formerly in the computer department of the Columbia Business School who would testify that Defendant's allegations of poor job performance and uncivil behavior by Plaintiff were fabrications. (Id.) He stated that they were employees because they were either paid or received pay and tuition breaks as compensation. (Id. at 5.) Lastly, Plaintiff

16

acknowledged that in response to the Court's February 3, 2008 order, Defendant had supplied him, on or about February 8, 2008, with the last known addresses of the six persons listed on Defendant's Rule 26 Disclosure Statement, but Plaintiff claimed that Defendant had not responded to Plaintiff's request for the production of documents and interrogatories which the Court had ordered Defendant to disclose in its order. (Id.)

Defense counsel responded that Columbia had complied with the Court's order of February 3, 2008 by informing Plaintiff that it objected to the interrogatories in their entirety and that the documents Plaintiff had requested were in his possession and that they had no more documents to give, and that Plaintiff was entitled to move to compel any documents or answers to interrogatories. (09/02/08 Tr. at 6.) The Court pointed out to defense counsel that in a *pro se* litigation this was not a proper response to court orders to produce documents and answer Plaintiff's interrogatories. (Id.)

The Court then ordered that the matter be adjourned to Tuesday, September 12, 2008 at 9:30 AM and that Columbia's general counsel be present at this conference.

## II. Plaintiff's Motion for a Default Judgment and Defendant's Motion to Compel.

On September 10, 2008, Plaintiff filed a motion for a default judgment, amongst other requested relief, based on Defendant's failure to comply with his discovery demands and court orders. Specifically, Plaintiff maintains that Defendant: 1) failed to obey court orders; 2) failed to answer interrogatories; 3) failed to respond to a request for production of documents; 4) failed to disclose addresses and telephone numbers in its sole possession; 5) provided evasive, incomplete and redacted information; 6) failed to send its supplemental disclosure a week from January 18, 2008; 7) deceived the judge in its letter of January 18, 2008 by assigning Plaintiff the blame for the delayed discovery; and, 8) failed to answer an interrogatory articulating a legitimate non-discriminatory

17

reason for unlawfully terminating a qualified Asian-American from his position as an Officer of Administration, Grade 12 or more.

Plaintiff's motion revolves around Defendant's response to discovery relating to the production of two of fourteen transcripts (Kim Aff. ¶22), the production of the addresses and telephone numbers of the witnesses described in both Defendant's and Plaintiff's Rule 26 disclosures (Id. ¶¶3-10, 27-29), and the production of a Columbia University employment manual from 1986. (Id. ¶¶18, 30.) Further, Plaintiff contends that Defendant has failed to answer Plaintiff's second interrogatory and Request for Documents dated November 30, 2007 and May 22, 2008, which asked for a substantial amount of information from Columbia concerning both Plaintiff and the potential witnesses at trial. (Id. ¶¶24, 34-35.)

In terms of relief, Plaintiff's motion seeks not only the production of documents, contact information for potential witnesses, and complete responses to his two interrogatories, but also sanctions for Defendant's alleged delay in providing requested material to Plaintiff. Specifically, under Fed. R. Civ. P. 37, Plaintiff seeks to a) compel Defendant's response to "all interrogatories" and "all documents requested"; b) compel the depositions of Vanessa Clark, Rona Carr, Joseph Kissane (Chair of the Grievance Committee), Mark Olson (represented Columbia at the Grievance Hearing), David Powell (Regional Director of NYSDHR), Arthur Greenridge (New York State Human Rights Specialist), Meyer Feldberg (former Dean of Columbia Business School), Richard Kopaz (director of Columbia University Arden House Conference Center), and Patricia Catapano (associate General Counsel of Columbia); c) impose sanctions against Defendant, such as: i) directing certain facts to be taken as established, ii) prohibiting Defendant from defending against the action, iii) informing the jury of Defendant's

18

alleged failures, iv) rendering a default judgment against Defendant, v) imposing and awarding costs and expenses, vi) holding Defendant in contempt, and vii) barring defense counsel from further practicing in this Court.

In an October 13, 2008 response to Plaintiff's motion for a default judgment and other relief, Defendant contends that while Defendant erred in failing to provide Plaintiff with a complete set of the hearing transcripts, Plaintiff should not have waited seven months to bring this inadvertent error to defense counsel's attention. (Def. Memo at 3-4.) As for Defendant's failure to provide the addresses of witnesses requested by Plaintiff, Defendant acknowledges its delay, calling it an "oversight rectified as soon as possible after the error was recognized by counsel," but claims that Plaintiff suffered no prejudice from this oversight. (Id. at 4-7.)

As pertains to the personnel manual requested by Plaintiff, Defendant ascribes any failure to produce the manual to Plaintiff, citing to Plaintiff's alleged improper "wording of his request and his apparent unwillingness to clarify his demand." (Def. Memo at 7-8.) Defendant also contends that the lengthy delay in providing Plaintiff with many of his discovery requests was due to Plaintiff's failure to return phone calls from Defendant or respond to Defendant's letters. (Id.) Lastly, Defendant filed a cross-motion to compel more specifics as to the knowledge of the persons listed on Plaintiff's Rule 26 disclosures.

On November 12, 2008, Plaintiff replied to Defendant's response. Plaintiff pointed out that on November 26, 2007 he had made a request for a copy of the correct version of Columbia University's Personnel Policy Manual, and that he had explained in his request that this manual provided that "Officers of University Administration would not be terminated except for 'cause' as well as policy guidelines for termination of

19

employment." Plaintiff further contended that the Court ordered Defendant to produce the manual by February 8, 2008, and that defense counsel did not respond to the request or the order until April 30, 2008, and even on that date, Defendant produced only two pages of the Manual entitled "Release and Discharge." Additionally, Plaintiff asserted, while Defendant has denied that such a manual has existed, a New York State decision from 1990 -- Aharana v. Trustees of Columbia University, 163 A.D.2d 8 (N.Y. App. Div 1st Dept. 1990) -- demonstrates that the manual existed at the time Plaintiff was employed.[2]

In his response, Plaintiff went on to detail the many alleged failures of Defendant to provide him with discovery materials. Plaintiff also contended that while Defendant ascribed the delay largely to him, he denied that he had failed to return defense counsel's phone calls or answer her letters concerning problems with discovery. Plaintiff demanded Defendant's records of telephone calls made to his telephone number by Defendant.[3]

## III. Findings of Fact Concerning Defendant's Failure to Provide Proper Discovery to Plaintiff.

### A. Hearing Transcripts

On May 9, 2007, this Court ordered that by May 15, 2007, Defendant provide Plaintiff with the transcripts from the 2002-03 hearing concerning this case that was held before the New York State Department of Human Rights. The transcripts consisted of

---

[2] The relevant part of Aharana v. Columbia, supra, states that "contrary to defendant's assertions, the IAS court did not err in determining that the plaintiff had sufficiently alleged a contractual limitation of defendant's right to terminate his at-will employment based upon policy numbers 113 and 113.3 of the Columbia Personnel Policy Manual, which provided that 'Officers of administration' would not be terminated except for 'cause,' as well as policy guidelines for termination of employment." Case tracing indicates there was a jury verdict for the plaintiff in Aharana in 1994.

[3] The Court declines to render any decision based on this dispute between counsel and Plaintiff about telephone calls.

20

over 2,000 pages of testimony that had been taken over multiple non-consecutive dates. The opinion of the Division of Human Rights, which was provided by Defendant and presumably possessed by Plaintiff as well, stated that a public hearing had been held on this matter before "David W. Bowden, Administrative Law Judge (ALJ)" on "October 8, 9, 10, 11, December 17 and 18, 2002, and May 13, 20, 29, March 19, 20, 21, August 19, and September 4, 2003." (Barbieri Decl., Ex. TT at 1.)

On May 15, 2007, Defendant mailed to Plaintiff a box containing twelve hearing transcripts. According to defense counsel, when the transcripts were mailed on May 15, 2007, counsel believed "in good faith that all the hearing transcripts were included in the box sent to Plaintiff." (10/14/08 Barbieri Aff. ¶20.) On December 17, 2007, Plaintiff wrote to Defendant explaining that there were 14 days of the hearing, not twelve, and that Defendant had neglected to provide him with the transcripts from October 9, 2002 and May 29, 2003. (Barbieri Decl., Ex. U.) On February 27, 2008, Defendant sent to Plaintiff the transcript from the May 29, 2003 proceedings. Defendant advised Plaintiff that it had not located the transcript from October 9, 2002, and that it had contacted the State to determine if the transcript was in the Court file. On April 10, 2008, having located the October 9, 2002 transcript, Defendant mailed this transcript to Plaintiff. Defendant noted that no testimony had taken place on October 9, 2002. (Id.)

The Court finds that while Defendant neglected to send Plaintiff two sets of transcripts on the day ordered by the Court, and that Defendant had proper notice that transcripts for those two days existed due to the fact that those dates were noted in the hearing court's decision on the matter, there is nothing to indicate that this was done in bad faith or was motivated by malice; rather, it was an error. Further, had Plaintiff inspected the transcripts upon arrival and not waited more than four months to bring the

21

missing transcripts to Defendant's attention, part of the long delay would have been obviated. Lastly, once Plaintiff had apprised defense counsel in December, 2007 and again in February, 2008 that two transcripts were missing, defense counsel took reasonable and prompt measures to procure the missing transcripts for Plaintiff.

*B. The Production of the 1986 Personnel Manual*

On November 26, 2007, Plaintiff sent Defendant a request for documents under Rule 34 of the Federal Rules of Civil Procedure, asking for a "copy of a correct version of Columbia University Personnel Policy Manual that is relevant at the time plaintiff was initially hired. (1986.)." Plaintiff further added that "this particular Columbia University Personnel Policy Manual provided that 'Officers of Administration' would not be terminated except for 'cause' as well as policy guidelines for termination of employment." On January 30, 2008, having not received the manual from Defendant, Plaintiff wrote the Court and asked the Court to order Defendant to turn over the manual. On February 5, 2008, the Court ordered Defendant to "answer these requests for production of documents … by 2/8/08."

Defense counsel did not respond to Plaintiff's request for the manual, nor did defense counsel heed the Court's order. Rather, it was not until April 30, 2008 that Defendant responded and produced two purported pages of the Manual entitled "Release" and "Discharge." It took Defendant five months to produce these two pages from the 1986 manual.[4] In defense counsel's October 14, 2008 affidavit in response to Plaintiff's moti0n, counsel stated that she did not timely respond to Defendant's request for the manual because there was "no personnel policy manual that contained a policy as

---

[4] Notably, Defendant does not deny that it "received Plaintiff's Request for Production" of the personnel manual on November 26, 2006, and "served its response on April 30, 2008." (09/11/08 Declaration of Laura Barbieri, at 2.)

described by plaintiff." (10/14/08 Barbieri Aff. ¶58.) Defense counsel stated that "Columbia responded [to Plaintiff] that no such manual existed and that [P]laintiff's purposed description or recitation of such a policy is error." (10/14/08 Barbieri Aff. ¶58.)

Yet this response did not come until April 30, 2008, nearly five months after Plaintiff made his single document request. Further, it was evident from Plaintiff's document request that he wanted the personnel manual as it existed at the time he was hired in 1986. Plaintiff's request was not, as defense counsel purported it to be, for a manual only if it contained a policy that stated in sum and substance that officers of the University could be terminated solely for cause. (10/14/08 Barbieri Aff. ¶58.) If there were issues over interpretation of *pro se* Plaintiff's request for documents, defense counsel should have immediately raised these concerns with Plaintiff, via letter, as well as the Court. Defendant should not have waited five months to make its objections known. Moreover, the Aharana, supra, decision evinces that contrary to counsel's contention, the manual described by Plaintiff did exist. And as Defendant's counsel represented Columbia in the Aharana case as well, there is no excuse for the entire manual not being produced to Plaintiff.

*C. The Disclosure of Witnesses' Contact Information by Defendant.*

On July 17, 2007, the Court ordered Defendant to produce the addresses of the six witnesses -- Doreen Mocha, Professor Richard Sacks, James Haggard, Vanessa Clark, Dean Gerry Lewis, and Rona Carr -- listed on Defendant's initial Rule 26 form disclosure. (Kim Aff. Ex. 2). Rule 26(a)(1) provides that a party must disclose the "address and telephone number" of each individual "if known" by the party. On the Rule 26 disclosure form, Defendant wrote that none of the aforementioned persons address or telephone number was known, and further, "the addresses and telephone numbers of

23

former faculty, employees and students are not provided to requesting parties without the express and written consent of the individuals."

On November 19, 2007, with none of the six witnesses' contact information having been produced by Defendant, Plaintiff served an interrogatory on Defendant, requesting the last known address and phone number for Rona Carr and Vanessa Clark, as well as the reasons and dates of their departure/termination from Columbia. Under Fed. R. Civ. P. 33(b)(2), the responding party must serve its answer within 30 days after being served with an interrogatory, although a "shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Defendant did not seek the Court's permission for an extension of time, and there is no evidence of any agreed upon stipulation.    On December 14, 2007, Plaintiff wrote the Court, complaining that Defendant had not provided the addresses of the six persons listed on Defendant's July 2007 Rule 26 disclosure.

On December 19, 2007, the Court ordered Defendant to disclose, by January 2, 2008, the addresses of the six persons listed on Defendant's Rule 26 disclosure report. Defendant did not comply with this order. Rather, it was not until January 18, 2008 that Defendant sent Plaintiff a list of the addresses of the six named witnesses in Defendant's Rule 26 Disclosure, which included Rona Carr and Vanessa Clark. (Kim Aff. Ex. 6.) Defendant did not provide Plaintiff with phone numbers for the witnesses,[5] and Defendant did not answer why Rona Carr and Vanessa Clark left the employ of Columbia until February 9, 2008 (Barbieri Decl., Ex. BB), when Defendant formally responded to Defendant's November 19, 2007 Interrogatory. In that response, Defendant provided the

_____

[5] In defense counsel's affirmation dated September 11, 2008, she contends that she had provided the phone numbers for the six witnesses on January 18, 2008 to Plaintiff. (09/11/08 Barbieri Decl., Ex. D at 1.) Plaintiff contests this, and the Court has been unable to find any document where Defendant provided the last known telephone numbers for any of the witnesses.

24

reasons for Carr and Clark's departure from Columbia, but claimed that the last known address and the phone numbers for Carr and Clark and the dates of their departure would be provided subject to a confidentiality order, which was not attached. As noted, Plaintiff denies receiving the February 9, 2008 answer, and Defendant does not produce any evidence that it was sent.

Defendant's excuses for this belated disclosure of the contact information for the six witnesses are multifold. First, defense counsel contends that while the Court ordered her to provide the contact of the six witnesses listed on Defendant's Rule 26 Statement on July 17, 2007, the failure to provide this information until January 18, 2008 was the "result of a combination of circumstances and errors" that was "an error, and an oversight, but [was] not intentional." (10/14/08 Barbieri Aff. ¶45.) Next, defense counsel contends that after she received Plaintiff's first interrogatory in November 2007 requesting the address and phone number of Clark and Carr, defense counsel claims that she "made numerous but unsuccessful attempts to reach plaintiff directly" to discuss the requested information. (Id. ¶43.) In short, defense counsel blames the late disclosure on counsel's failure to discuss the requested information with Plaintiff. (Id. ¶49-55.)

But Plaintiff's request for the addresses of Carr and Clark was straightforward, and required little clarification by Defendant. There was no need for defense counsel to speak with Plaintiff regarding his request, and any communication could have been conducted via certified mail. Moreover, defense counsel could have brought any communication issues or clarification issues to the Court's attention, but counsel neglected to do so until January 17, 2008, nearly two months after Plaintiff's interrogatory had been filed, and six months after the Court ordered the witnesses' information produced. None of the communication issues raised by Defendant, and

which Plaintiff vigorously denies, excuse Defendant's failure to provide Plaintiff with the addresses and phone numbers of the six witnesses listed on Defendant's Rule 26 statement. This is information Defendant could easily obtain and which could be disclosed via certified mail.

Meanwhile, on October 18, 2007, Plaintiff provided to defense counsel his own Rule 26 disclosure statement, which was dated July 20, 2007. In his statement, Plaintiff provided the names of forty-one witnesses, and stated that the addresses and phone numbers of the witnesses were in the "sole possession of Columbia University," and that as soon as Columbia "disclose[d] that information, as required," he would provide it to the Court. On December 31, 2007, Plaintiff provided the names of fifteen additional witnesses, and again stated that their addresses and telephone numbers were in the "sole possession of defendant Columbia University" and that as "soon as defendant Columbia University disclose[d] that information, as required," he would provide it to the Court. Plaintiff further informed Defendant that "this is a second request for the addresses and telephone numbers of all persons listed in the Rule 26 Initial Disclosure Statement dated July 20, 2007 and all persons listed in this Supplement Disclosure." Thus, while this was not the entirely correct method for doing so, Plaintiff put Defendant on notice that he was requesting the contact information for all fifty-six of his potential witnesses.

On January 17, 2008, Defendant wrote to Plaintiff, stating that it had received his Rule 26 Disclosures, and that "Federal Rule of Civil Procedure 26 does not require you to provide Columbia with information we may already have...Accordingly, Columbia does not require that you provide this contact information to us." (Barbieri Aff. Ex. Y.) Defendant never provided Plaintiff with any of the contact information for any of his Rule 26 names, and Defendant did not request a conference with the Court as to the

26

relevance of the request or as to any limitations on Plaintiff's discovery. Instead she made no response.

It was not until April 30, 2008 that Defendant sent Plaintiff the contact details for two of the requested witnesses, Nachum Sicherman and Kathryn Harrigan Rudie, who were both professors at Columbia Business School and whose contact information was posted on Columbia's website. In that same correspondence, defense counsel told Plaintiff to "amend" his disclosure requests to "include the specific information" that each of the witnesses on Plaintiff's Rule 26(a) disclosure list had on Plaintiff's unlawful termination. (Id.) This response came at least four to five months after Plaintiff sent his initial list of witnesses under Rule 26, along with a request for their contact information.

Defense counsel repeated this excuse -- that Plaintiff failed to provide sufficient information regarding each witness -- at the September 2, 2008 conference with the Court. (09/02/08 Tr. at 3.) But at the initial May 9, 2007 conference, defense counsel asked Plaintiff to provide just a "brief summary of what kind of knowledge" each witness had with regard to the case (05/09/07 Tr. at 22), and Defendant's initial Rule 26 disclosure, which contained forty-one potential witnesses, did just that. And in Plaintiff's supplementary list of fifteen names, while not providing as much detail as was put forth in his initial list, also provided a sentence or two description of what information each witness had. Thus, it is clear that defense counsel's plea that Plaintiff's Rule 26 disclosure was insufficiently particularized was yet another dilatory tactic from defense counsel designed to thwart the *pro se* Plaintiff.

Finally, at the September 12, 2008 conference with the Court, defense counsel reversed course and stated that the names of the forty-one students and former employees that Plaintiff requested through his Rule 26 Disclosure would be provided subject to a

27

confidentiality order. (09/12/08 Tr. at 7.) This was the first time that defense counsel brought the issue of the Confidentiality order to the Court's attention. (Id.) Defense counsel acknowledged that the last-known addresses of Plaintiff's witnesses would be contained in alumni and employee records that the University maintains. (Id. at 9-10.)

Thus, the record is clear that defense counsel repeatedly and willfully failed to comply with both the rules of discovery and this Court's orders in turning over the addresses of the witnesses contained on both Plaintiff's and Defendant's Rule 26 statements. Not only did defense counsel refuse to turn over the addresses listed on its own Rule 26 Statement for more than six months, but she also failed to heed two Court orders as well as answer Plaintiff's Interrogatory within the allotted time. Further, defense counsel recognized that Plaintiff wanted the addresses of the witnesses listed on his Rule 26 statements, but once again, counsel employed a variety of tricks and tactics designed to purposefully delay turning over this information that counsel admitted was in Defendant's possession.

## D. Defendant's Response to Plaintiff's November 30, 2007 Interrogatory.

On November 30, 2007, Plaintiff sent Defendant an interrogatory requesting information on his own pay and performance at Columbia, as well as specific and detailed information regarding other similarly situated persons who were employed by Columbia during his tenure there. (Kim Aff. Ex. 10.) In defense counsel's September 11, 2008 affidavit, counsel claims that she responded to this affidavit on December 12, 2007, well within the 30 day deadline. However, counsel provides no documentation to support her contention that a response was produced and sent, and Plaintiff denies receiving any response to this interrogatory. In subsequent letters sent to defense counsel by Plaintiff in January and February of 2008, Plaintiff wrote that he had not yet received

a response to this interrogatory. And defense counsel never once replied to Plaintiff to inform him that she had sent a reply in December of 2007, as would have been proper.

On May 22, 2008, Plaintiff submitted another interrogatory to defendant; this interrogatory largely repeated his requests described in the November 30, 2007 interrogatory. It is undisputed that Defendant did not respond to this interrogatory until September 11, 2008, at which time defense counsel filed an affidavit which detailed her multiple objections to the information requested by Plaintiff.

While the Court declines to rule as to whether Defendant sent the December 12, 2007 response to the interrogatory that it now claims in its affidavit, the papers provided by both sides strongly suggest that no such response was sent. What is undisputed is that Defendant did not timely respond to Plaintiff's May 22, 2008 interrogatory requesting this same information. Unfortunately for Defendant, its tardiness in replying meant that any objections to the interrogatory were waived unless this Court "for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). This Court finds that no such "good cause" existed here.

**IV. Conclusion**

The issue presented in this opinion is what sanctions and remedies, if any, are appropriate here given Defendant's repeated and apparently willful failures to comply with this Court's orders as well as Plaintiff's legitimate discovery requests.

A. Applicable Legal Standard

Pursuant to Fed. R. Civ. P. 37, district courts have broad discretion in imposing sanctions to compel compliance with discovery, including rendering a default judgment against the noncompliant party. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976). Such sanctions derive from the district court's

"broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." Penthouse Int'l v. Playboy Enterprises, Inc., 663 F.2d 371, 386 (2d Cir. 1981). Rule 37 sanctions serve two purposes: "to penalize those whose conduct may be deemed to warrant such a sanction" and "to deter those who might be tempted to engage in such conduct in the absence of such a deterrent." Penthouse Int'l, 663 F.2d at 386.

Specifically, Rule 37 provides that when a party "fails to obey an order to provide or permit discovery," the district court "may issue further just orders" including the following: "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; "striking pleadings in whole or in part"; "staying further proceedings until the order is obeyed"; "dismissing the action or proceeding in whole or in part"; "rendering a default judgment against the disobedient party"; or, "treating as contempt of court the failure to obey any order...". Fed R. Civ. P. 37(2)(A)(i)-(vii).

The entry of a default judgment under Rule 37 "is a drastic remedy that should be imposed only in extreme circumstances, Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986), usually after consideration of alternative, less drastic sanctions. John Hull v. Waterbury Petroleum Products, Inc., 845 F.2d 1172 (2d Cir. 1988). Dismissal under Rule 37 is warranted, however, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault. Salahuddin, 782 F.2d at 1132; see also Waterbury Petroleum Products, 845 F.2d at 1177. While a showing of prejudice to the moving party is not a requirement for a dismissal under Rule 37, a court may consider it in weighing the appropriateness of the sanction. See Metropolitan Opera v. Local 100

30

Hotel Employees and Restaurant Employees Int'l Union, 212 F.R.D. 178, 229 (S.D.N.Y. 2003). In addition to willfulness or bad faith on the part of the nonmoving party and prejudice to the moving party, other factors that appear appropriate to the court to consider are the history, if any, of noncompliance, whether lesser sanctions would be effective, whether the noncompliant party has been warned about the possibility of sanctions, and the client's involvement. See American Cash Card v. AT&T, 184 F.R.D. 521, 524 (S.D.N.Y. 1999).

## B. Application

The behavior of defense counsel from July 2007 to September 2008 as pertains to the disclosure of witnesses' contact information, the release of the Columbia staff manual, and her response to Plaintiff's interrogatories, was not conducive to a prompt trial of this case in accordance with the Court's scheduling orders. Indeed the long delays in defense counsel's responses were tactics designed to wear out Plaintiff, who was proceeding *pro se*.

Defense counsel's excuses for delaying discovery ring hollow. Had defense counsel wanted a confidentiality order before she turned over the requested addresses and contact information, she merely had to advise the Court and provide a copy of a proposed confidentiality order to Plaintiff. If defense counsel believed Plaintiff should be required to give more information about his witnesses' knowledge of relevant matters, she should have promptly advised the Court and filed a motion to compel. And had defense counsel not understood Plaintiff's request for the staff manual, she should have immediately asked Plaintiff for clarification of his request, and if she could not reach Plaintiff, she should have brought the matter to the Court's attention. Instead, as described above, defense counsel belatedly responded to Plaintiff's demands by letter with discovery

31

responses designed to mislead *pro se* Plaintiff in his discovery efforts and to delay the litigation for months. In short, defense counsel's excuses are too little and come too late. Defense counsel's actions here merit sanctions, but the "drastic remedy" of the entry of a default judgment against Defendant is not yet warranted.

Accordingly, pursuant to Rule 37(b), Plaintiff's motion is granted in part, and Defendant's motion to compel Plaintiff to supplement Plaintiff's initial Rule 26 Disclosure statement to further identify the alleged subject matter of the individual's knowledge with further specificity as to each individual's knowledge of Plaintiff claim is denied as untimely. The Court is holding Plaintiff's motion for a default judgment is being held in abeyance pending Defendant's compliance with this order. By March 13, 2009, Defendant is ordered to provide Plaintiff with the last known address and telephone number of each person listed in Plaintiff's initial and supplemental Rule 26 Disclosure Statements. Also by March 13, 2009, Defendant is ordered to provide the last known telephone numbers of the six witnesses Defendant listed in its own Rule 26 Disclosure, if such information has not already been provided.

Plaintiff, or any *pro bono* counsel who volunteers to represent Plaintiff, shall have until sixty days from March 13, 2009 to contact by mail and/or by telephone the individuals specified in the Rule 26 disclosure sheets, as well as Vanessa Clark and Rona Carr or other persons believed to have knowledge of Plaintiff's claims of improper termination and age or ethnic origin discrimination or actions of Defendant in retaliating against Plaintiff for filing a claim with the EEOC. After contacting potential witnesses and determining if they have relevant information, Plaintiff may make an application to the Court to depose witnesses with relevant information. If the Court finds that Plaintiff has made a showing of good cause that a witness or witnesses has or may have

32

information relevant to his case, the Court will order the deposition of those witnesses at Defendant's expense.

Defendant is also ordered to produce by March 13, 2009, has it not already done so, a complete copy of the Personnel and Procedures Manual as it existed from 1986-2002.[6] This is the same manual Defendant produced during Columbia's litigation with Aharana, supra. Also by March 13, 2009, Defendant shall produce to Plaintiff all memoranda submitted by the parties in Aharana as well as the trial transcript for that litigation. Due to the inexcusable delay in providing this manual, it will be taken as fact at trial that Plaintiff could be terminated by Defendant solely for "cause" in accordance with the policy guidelines for termination of employment, as described in the manual.

Lastly, by March 13, 2009, Defendant is ordered to fully and completely respond to Plaintiff's May 22, 2008 interrogatory, which, on the second page of that document, asked for four pieces of information: the "personnel records" of Plaintiff; his "job title and description, as well as the starting date and termination date of [P]laintiff's employment"; his "compensation" (including fringe benefits received by Plaintiff), and the "legitimate non-discriminatory reason(s) the defendant claims motivated" Plaintiff's termination. With regard to the last item -- the reason for Plaintiff's termination from Columbia -- Defendant is ordered to turn over to Plaintiff any and all "supporting documents, reports, memos," or other information relevant to Plaintiff's firing in 1992.[7]

---

[6] Defendant asserts in its reply papers related to this motion that it is providing the manual to "plaintiff coincident to this opposition and response." (Def. Memo at 7-8.)

[7] In view of defense counsel Laura Barbieri's withdrawal from the firm representing Defendant and her illness as evidenced by counsel's letter to the Court in December of 2008, the Court will not impose any discipline on Ms. Barbieri.

SO ORDERED.

Dated: New York, New York
      March 2, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Order sent to:

*Plaintiff John Y. Kim (by mail):*
c/o Harry Kim
531 Eastgate Road
Ho-Ho-Kus, NJ 07423

*Counsel for Defendant Columbia University(by fax):*
Schoeman, Updike & Kaufman
60 East 42nd Street
New York, NY 10165
(212) 661-5030
Fax: (212) 687-2123

34