UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN Y. KIM,

                          Plaintiff                          06 CV 5365 (RPP)

      - against -

                                                  **ORDER & OPINION**

COLUMBIA UNIVERSITY,
                          Defendant
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

    **I.   Introduction**

Plaintiff, John Kim ("Mr. Kim"), appearing pro se, moves this Court for a new trial pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. From November 8, 2010 to November 15, 2010, this Court held trial on Mr. Kim's claims of race and age discrimination and retaliation for his complaint of age and race discrimination against his former employer, Defendant, Columbia University ("Columbia" or "University"). Mr. Kim, then represented by three pro bono attorneys from the firm Vladeck, Waldman, Elias & Engelhard, P.C., brought his claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq, New York State Executive Law § 290 et seq, and the Administrative Code of the City of New York § 8-101 et seq. On November 15, 2010, the jury returned a verdict in favor of the Defendant on all claims.

Sixty days later, on December 16, 2010, Mr. Kim submitted his notice of motion for a new trial. Columbia submitted its opposition to the motion on January 18, 2011. Mr. Kim submitted his reply affirmation on February 23, 2011.

1

For the following reasons, Mr. Kim's motion is denied.

**II. Factual Background**

In 1986, Mr. Kim was hired as "consultant" at the Dohr Computer Lab at the Columbia Business School. (Tr. at 101.)[1] He worked at Columbia for "about six years," receiving numerous promotions and pay raises, including a promotion in 1990 to the position of Assistant Director of Microcomputer Systems, Computing Activities – a position which elevated him to an Officer of the University. (Id. at 103, 108-17; Pl. Ex. 3,5,9.) Mr. Kim was recognized as an extremely hard-working and experienced employee with many hours of overtime. (Tr. at 109, 120; Pl. Ex. 2-6, 10-11.) He was terminated from employment on April 6, 1992. Mr. Kim was born in South Korea on September 26, 1948, making him thirty-eight years old when he was hired by Columbia, and forty-four years old when he was terminated from his employment. (Tr. at 94.)

On March 27, 1991, Mr. Kim's supervisor, Richard Sacks ("Mr. Sacks"), the Executive Director for Information Technology, issued a warning letter to the Plaintiff. (Id. at 127-30, Def. Ex. G.) In the letter, Mr. Sacks stated: (1) that in November 1990 the Plaintiff had previously disappeared from his job for two days without notice; (2) that the Plaintiff had been warned after that disappearance; (3) that the Plaintiff engaged in "bouts of inappropriate and uncivil behavior toward other members of the staff"; and (4) that the letter was a "formal and final warning," which notified Plaintiff that "[a]ny further behavior of the kind that has been discussed will result in [Plaintiff's] immediate dismissal." (Def. Ex. G.)

---

[1] "Tr," refers to the trial transcript of John Y. Kim v. Columbia University, 06CV5365 held before this Court between November 8, 2010 and November 15, 2010.

In July 1991, James Haggard ("Mr. Haggard") replaced Mr. Sacks as the Executive Director for Information Technology. (Tr. at 135.) In about September of 1991, Mr. Haggard hired Vanessa Clark ("Ms. Clark"), an MBA student, as a student employee. (Id. at 150, 620.) Ms. Clark described her duties as that of "the business manager of the department," (id. at 620), and testified that it was her role to "track equipment that was ordered, make sure it got paid for, make sure it was approved…follow the invoices through the university disbursement system, and reconcile[] those payments." (Id.)

Ms. Clark also testified that in about September or October of 1991, she, Mr. Kim and "everybody in the department who was involved in [product purchases]" developed the Internal Purchase Order ("IPO") form. (Id. at 622.) The goal of the form, she explained, "was to make sure [that] the equipment … ordered [by the department] was within the budget, and was appropriate, and approved by Jim Haggard, the Associate Dean of the department." (Id. at 622.)

Ms. Clark testified that on March 19, 1992, she and Mr. Kim got into a verbal altercation in Mr. Kim's office over his failure to follow IPO procedure before ordering certain equipment. (Id. at 625-26.) Ms. Clark testified that Mr. Kim "started yelling" at her, turned red in the face and seemed "to really just kind of snap and become…very, very angry." (Id. at 626.) Ms. Clark further testified that Mr. Kim followed her out of his office, "ranting and raving and very upset and agitated," and that he might have "either kicked [or] threw" a printer cartridge box after her. (Id.) The box hit the door jab of Ms. Clark's office, "at which point [she] closed the door and sat down at [her] desk." (Id.) Mr. Kim disputes Ms. Clark's characterization of the events and testified that at the time she

3

approached him, he was busy with a student worker and that when he told her this, she was the one who "got excited" and told him that she was "sick and tired of chasing after paperwork." (Id. at 153.) Mr. Kim testified that he never physically threatened Ms. Clark and that he never threw or kicked any box at her. (Id.) Mr. Kim testified that after his altercation with Ms. Clark, he saw Mr. Haggard, told him "I can't believe the way you guys are treating me," and asked if they could "talk about this tomorrow." (Id. at 154.) Mr. Kim testified that Mr. Haggard said "okay" and that Mr. Kim then left the office for the day. (Id.)

Ms. Clark testified that she reported the incident to Mr. Haggard and that she wrote, at his request, a memorandum detailing her altercation with Mr. Kim. (Id. at 638.) Mr. Haggard then reported this incident to Rona Carr ("Ms. Carr"), the head of human resources at the Business School. (Id. at 817.) Mr. Haggard testified that he had a conversation with Ms. Carr about the incident between Ms. Clark and Mr. Kim, and that Ms. Carr's recommendation was immediate termination. (Id. at 818.) Mr. Haggard testified that he was not comfortable with terminating Mr. Kim at that time so he instead decided to place Mr. Kim on suspension. The following day, on March 20, 1992, Mr. Haggard and Ms. Carr met with Mr. Kim and placed Mr. Kim on a two-week suspension. (Id. at 819.)

Mr. Haggard testified that during Mr. Kim's suspension, he "discovered that the issues with compliance with – in particularly [sic] with purchases and procurement process were more than just not following departmental policy." (Id. at 819.) Mr. Haggard testified that "[t]here were cases where there were actions taken that were not consistent with the school's or the university's purchasing policy…I discovered that the

4

depth of the issue in terms of the purchasing was more serious than I originally understood." (Id. at 819-20.) On April 1, 1992, Haggard presented a memorandum to Jerry Lewis ("Dean Lewis"), Associate Dean for Administration, highlighting Mr. Kim's "repeated[] disregard[ of] both university and departmental purchasing and control procedures." (Def. Ex. K.) Mr. Haggard also testified that during Mr. Kim's suspension, either "the day of the incident or the following day when he was given suspension" he became aware of the previous "final warning letter" given to Mr. Kim by Mr. Sacks. (Tr. at 836.) After learning the extent of Mr. Kim's violations of university and departmental policies, and becoming aware of the previous "final warning letter," Mr. Haggard came to the decision to terminate Mr. Kim upon his return. (Id.)

On April 6, 1992, Mr. Kim returned to work as directed, and found "a note under [his] door" – a letter of suspension dated March 23, 1992. (Id. at 157.) The letter stated that Mr. Kim's "continued disregard for departmental policies and procedures, and unprofessional behavior towards [his] co-workers will not be tolerated, for any reason." (Def. Ex. J.) The letter also stated that Mr. Kim would be suspended from employment effective Monday, March 23, 1992 through Friday, April 3, 1992 and that Mr. Kim should "return to work [on] Monday, April 6, 1992 at your normally scheduled time." (Id.) Mr. Kim then reported to Ms. Carr in Human Resources, as instructed by the letter. (Tr. at 159.) At the meeting, Ms. Carr presented Mr. Kim with a letter of "release," which she gave Mr. Kim an opportunity to sign. (Def. Ex. L). A "release" is defined by the Columbia University Personnel Policy Manual as "a termination at the discretion of the University." (Def. Ex. H at § 113.2.)[2] The letter indicated the release would be effective

---

[2] According to Columbia University's Personnel Policy Manual in effect at the time, "[a] release, rather than a discharge, is used when a) the situation reveals that the employee was willing to work and was

5

as of April 6, 1992 and conditioned Mr. Kim's release upon an agreement of confidentiality regarding the contents of the agreement and upon Mr. Kim's "release and discharge [of] the University, and its trustees, officer and employees, from all claims…in connection with [his] employment by the University and [his] layoff there from, including all claims arising under the Equal Pay Act of 1963…Title VII of the Civil Rights Act of 1964…the New York Human Right Law…and the Age Discrimination in Employment Act…" (Def. Ex. L.) Mr. Kim did not sign the letter and rather asked Ms. Carr if he could meet with Dean Lewis. (Tr. at 159-60.) Mr. Kim testified that he went to speak with Dean Lewis who told him "[he] was fired" and provided Mr. Kim with a copy of the April 1, 1992 letter from Mr. Haggard highlighting the various violations of university procedures which became apparent during Mr. Kim's suspension. (Def. Ex. K, Tr. at 163-64.) Mr. Kim testified that the document consisted of "a number of false accusations…[and that he] told Jerry Lewis that all of these accusations were baseless and totally untrue." (Tr. at 164.)

Soon after his termination, Mr. Kim wrote to Columbia University's Vice President for Personnel Management and Human Resources, requesting a formal hearing to contest his suspension and termination. (Pl. Ex. 12, id. at 174-75.) In addition, on April 29, 1992, Mr. Kim filed an internal discrimination complaint to Columbia's Office of Equal Opportunity and Affirmative Action alleging discrimination on the basis of his race, age, and unspecified disability. (Pl. Ex. 13.) According to University policy, a three

---

attempting to perform the job duties but was unable to perform satisfactorily and was not able to transfer to a lower job classification…or b) the employee's termination is determined by the Vice President for Personnel Management to be in the best interest of the employee or the University." (Def. Ex. H at § 113.2.) A "discharge is a termination initiated by the University for cause including, but not limited to, insubordination, excessive absenteeism or lateness, falsification of records, illegal acts, repetition of behavior for which an oral or written warning was given or violation of published Personnel Policy. An employee who is discharged shall not be employed elsewhere within the University." (Id. at § 113.3.)

member committee – one member chosen by the complainant, another chosen by the Business School and a third chosen by the first two members – would review Mr. Kim's grievance and his internal discrimination complaint. (Tr. at 176.) Mr. Kim selected John C. Burton ("Dean Burton"), former Dean of the Business School,[3] the school chose Mark Olson ("Mr. Olson"), Deputy Vice President for Student Administrative Services, and Dean Burton and Mr. Olson together selected Joseph Kissane ("Mr. Kissane"), Director of the Summer Session, as the Chairperson and final member of the grievance committee. (Id. at 176-77.) The committee convened in June of 1992 and interviewed Ms. Carr, Mr. Haggard, Dean Lewis, Ms. Clark and Mr. Kim. (Pl. Ex. 27.) On June 25, 1992, Mr. Kissane circulated a draft report that concluded: 1) "the department's action to release Mr. Kim from employment was not carried out according to proper procedure"; and 2) "[t]he department's decision that Mr. Kim's release was required may be supportable." (Id.) A second draft report prepared by Mr. Kissane on July 13, 1992, stated that "the Graduate School of Business acted properly first in its suspension and then in its release of John Kim." (Pl. Ex. 29.) A third draft report prepared on September 28, 1992 contained the same conclusion. (Pl. Ex. 33.) The final report concluded that the suspension and release of Mr. Kim were proper and was sent to Senior Vice President Joseph Mullinix on October 16, 1992. (Pl. Ex. 34.) One committee member, Dean Burton, dissented from this conclusion, and wrote separately to express his concerns as to the manner in which the grievance committee conducted its business in reaching its decision and as to the validity of the evidence presented to the committee as grounds for Plaintiff's discharge. (Pl. Ex. 35.) On December 29, 1992, Senior Vice President Mullinix

---

[3] Dean Burton is deceased and was unable to be deposed by Plaintiff due to a long illness prior to his death.

adopted the majority report and determined that "Mr. Kim's release stands…[and] that there was no discrimination involved in the decision to release [him]." (Pl. Ex. 36.)

On July 31, 1992, Mr. Kim filed a complaint against the Defendant with the New York State Division of Human Rights ("NYSDHR"), and cross-filed the same complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of age and race. (Opinion and Order dated July 1, 2010 ("Op. 7/1/10") at 7.) On August 15, 1995, the NYSDHR issued a finding of probable cause that Columbia University had engaged in an unlawful discriminatory practice and referred the case for a public hearing. (Id.) The hearing took course over twelve days in 2002 and 2003. On March 1, 2006, the NYSDHR issued an order concluding that Mr. Kim "was not fired under circumstances that give rise to an inference of unlawful discrimination" and that Columbia's "articulated reasons for firing [Mr. Kim] were not proven to be pretextual." (Id.) The complaint was dismissed on the merits. (Id.) On March 29, 2006, the EEOC adopted the findings of the NYSDHR and issued a right to sue letter. (Id.)

On July 17, 2006, Mr. Kim filed a complaint in this district alleging unlawful employment discrimination. He filed an amended complaint on June 11, 2007 and a second amendment complaint ("SAC") on August 18, 2007. (Id.) The SAC alleges unlawful discrimination on the basis of Plaintiff's age and race, in violation of Title VII, ADEA, the New York State Human Rights Law, and the New York City Human Rights Law. He alleged that the unlawful discrimination took the form of hostile work environment, failure to promote, unequal working conditions, retaliation, and termination. (Id.) At the close of discovery, Columbia moved for summary judgment and all claims except for the race and age discrimination claims were dismissed. (See

generally id.) On September 17, 2010, Valdi Licul of the firm Vladeck, Waldman, Elias & Engelhard, P.C., entered a notice of appearance on behalf of Mr. Kim on a pro bono basis. On October 21, 2010, Mr. Kim's counsel, moved to reinstate his claim for retaliation. This motion was granted.

A jury trial conducted between November 8, 2010 and November 15, 2010 resulted in a verdict for the Defendant. Judgment dismissing the complaint was entered on November 18, 2010.  On December 16, 2010, Mr. Kim, now again appearing pro se, moved this court for a new trial pursuant to Fed.R.Civ. P. 59 and 60. Defendant submitted its opposition papers on January 18, 2011. Mr. Kim submitted his reply affirmation in support of the motion on February 23, 2011.

### III. Legal Standard

Rule 60(b)(2) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b).[4] Evidence is considered "newly discovered" for the purposes of Rule 60(b)(2) "if it existed at the time of the prior adjudication but … was discovered by the movant only after the entry of judgment." Johnson v. Askin Capital Mgmt., L.P., 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (quoting Walker v. Department of Veteran Affairs, 1995 WL 625689, at *1 (S.D.N.Y. Oct. 25, 1995)). The movant who seeks to obtain relief from judgment under Rule 60(b)(2)

> must meet an 'onerous standard' by showing that: 1) the newly discovered evidence was of facts in existence at the time of the dispositive proceeding; 2) he was justifiably ignorant of those facts despite due

---

[4] Rule 59(b) provides: "The court may, on motion, grant a new trial on all or some of the issues – and to any party…after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

9

> diligence; 3) the evidence is admissible and of such importance that it probably would have changed the outcome; and 4) the evidence is not merely cumulative or impeaching.

United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001).

Rule 60(b)(3) provides that that "the court may relieve a party… [for] fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." To prevail on a Rule 60 motion on the basis of fraud, a movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." State St. Bank v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004). The Supreme Court has emphasized that judgment on the basis of "fraud…misrepresentation or misconduct by an opposing party," pursuant to Rule 60(b)(3) "should only be applied in extraordinary circumstances." Liljeberg v. Health Svcs. Acquisition Corp., 486 U.S. 847, 863 (1988).

Rule 59(a) provides that the "[t]he court may, on motion, grant a new trial on all or some of the issues…after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." For a district court to "order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or…the verdict is a miscarriage of justice, i.e. it must view the jury's verdict as against the weight of the evidence." Denis v. National R.R. Passenger Corp., 2009 WL 3097218, *3 (S.D.N.Y. Sept. 28, 2009).

### IV. Discussion

Mr. Kim seeks a new trial on the basis that "newly discovered evidence of discharging me from my employment with false cause, on the very day (April 6, 1992) I returned from unwarranted two week suspension as directed, because I <u>did not sign the</u>

10

letter of release, dated April 6, 1992, was newly discovered and made available after the trial as admitted by Rona Carr." (Affirmation of John Y. Kim in Support of Motion for a New Trial ("Kim Aff.") at 4-5.) Mr. Kim claims that Ms. Carr's testimony at trial "revealed for the first time that she, as director of human resources of Columbia Business School during [the] relevant period in April 1992, in fact did not release me from employment but deceitfully discharged me with false cause, with prior knowledge that it is a destructive form of termination that would result in irreparable harm and destroy my professional reputation and devastate my life, because I did not sign the letter of release." (Id. at 4.) Mr. Kim also alleges that Senior Vice President Mullinix and Columbia "willfully manipulated and abnormally delayed" the final decision as to his grievance until December 29, 1992 so that Columbia could "expand the temporal proximity" between the date it received the Notice of Fact Finding from the NYSDHR and Mr. Mullinix's final decision on Plaintiff's grievance.

Mr. Kim undoubtedly believes that he was discharged from employment for false cause and in an unfair manner as Dean Burton's dissent sought to show.[5] His lawsuit, however, is not based on such claims but on the ground that he was terminated on the basis of race and/or age discrimination and the evidence on those grounds was not strong. More to the point, the allegations Mr. Kim now puts forward do not rise to the level required for reconsideration of the jury verdict in this case, and as such, Mr. Kim's motion is denied.

---

[5] It also appears that as a result of Columbia Human Resource's refusal to respond to inquiries from prospective employers and Mr. Kim's preoccupation with this lawsuit, Mr. Kim's life has become "devastated".

### 1. Mr. Kim has not shown the existence of newly discovered evidence

A movant who seeks to obtain relief from judgment under Rule 60(b)(2) has an "onerous standard." U.S. v. Int'l Bhd. of Teamsters, 247 F.3d at 392. Mr. Kim has not met this burden. As Defense counsel points out in its opposition memorandum, the testimony of Ms. Carr at trial does not qualify as "newly discovered evidence." (Def. Opp. Memo at 6.) Ms. Carr was deposed by the Plaintiff in advance of trial and Plaintiff was "entitled to explore the issues as to which he now claims surprise" during that time. (Id.) To the extent that Mr. Kim believed that Ms. Carr's testimony at trial was inconsistent with her deposition testimony, counsel for Mr. Kim was also entitled to impeach her at trial on these grounds.

Mr. Kim claims that Ms. Carr's testimony makes clear "for the first time that [Ms.Carr]…did not release me from employment but deceitfully discharged me with false cause." (Kim Aff. at 4.) While it is true that Ms. Carr did not "release" Mr. Kim from employment, Mr. Kim has put forth no "newly discovered evidence" which indicates that Ms. Carr's actions were "deceitful" and based on "false cause." Rather, Mr. Kim is attempting to relitigate arguments which he already made, and lost, at trial.

Ms. Carr's testimony makes clear that on the day of the March 19, 1992 incident, it was she who recommended to Mr. Haggard that Mr. Kim be terminated immediately. Mr. Haggard testified that he decided that he preferred to place Mr. Kim on two-week suspension. During this period of suspension, Mr. Haggard concluded that there were a number of issues with Mr. Kim's work and the decision was made to terminate Mr. Kim's employment. Upon Mr. Kim's return to work following his two-week suspension, without any notice whatsoever, Ms. Carr presented him with a letter of release. If Mr.

12

Kim signed the letter of release, his employment would have still been terminated although he would have received additional benefits, such as severance pay. Mr. Kim did not sign the letter of release, and as such, was "discharged" by the University – he would receive no severance pay and would be ineligible for rehire by Columbia. That Mr. Kim may have "been misled by the language of the suspension letter into thinking that the incident with Ms. Clark was minor or that his reinstatement would be automatic may be unfortunate; it is not, however…evidence, 'newly discovered' or otherwise." (Id. at 13.)

Mr. Kim also alleges that Senior Vice President Mullinix and Columbia "willfully manipulated and abnormally delayed" the final grievance decision until December 29, 1992 so as to "expand the temporary proximity" between the date it received the determination from the NYSDHR and the final decision. Mr. Kim has failed to substantiate this allegation with anything more than his own words, and again has failed to cite any "newly discovered evidence" to support his claims.

Because Mr. Kim has failed to put forth any new information which was discovered only after the trial and could not have been discovered through due diligence on either his claim against Ms. Carr or against Mr. Mullinix, his motion for a new trial on the basis of "newly discovered evidence" is denied. See Johnson, 202 F.R.D. at 114; Int'l Bhd. of Teamsters, 247 F.3d at 392.

**2. Mr. Kim has not shown that Defendant perpetuated a fraud against him**

Mr. Kim also argues that he was the victim of fraud. To prevail on a Rule 60 motion on the basis of fraud, a movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." Aneja v. M.A. Angeliades, Inc., 2010 WL 199681, *1 (S.D.N.Y. Jan. 12, 2010). Mr. Kim makes no

13

allegations that there was fraud upon the court or misconduct in the trial. Consequently, his motion under Rule 60(b)(3) is also denied.

### 3. Mr. Kim has not set forth circumstances meriting a new trial pursuant to Rule 59(a)

Finally, Mr. Kim fails to set forth information supporting a request for a new trial under Rule 59(a). For a district court to order a new trial pursuant to this rule it must conclude that the jury has reached a "seriously erroneous result." Denis, 2009 WL 3097218, at *3. Mr. Kim has not put forth any information which would lead this Court to believe that the jury's determination is not based on evidence presented during the trial or is a "misrepresentation of justice" requiring a new trial. As such, Mr. Kim's motion under Rule 59(a) is also denied.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration pursuant to Fed.R.Civ.P. 59 and 60 is denied.

IT IS SO ORDERED.

Dated: New York, New York

May 1𝟞, 2011

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Order have been sent to:**

*Pro se Plaintiff:*
**John Y. Kim**
531 East Gate Rd.
Ho Ho Kus, NJ 07423


*Counsel for Defendant:*
**Charles B. Updike, Esq.**
Schoeman, Updike & Kaufman, LLP
60 East 42 Street
39th Floor
New York, NY 10165
Fax: 212-687-2123

15